Mark D. Stubbs (9353)
Jared B. Stubbs (14103)
**FILLMORE SPENCER, LLC**
3301 North University Avenue
Provo, UT 84604
Telephone: (801) 426-8200
Facsimile: (801) 426-8208
mstubbs@fslaw.com
jstubbs@fslaw.com
Attorneys for Molina

# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| MAYRA MOLINA, <br><br> Molina, <br><br> vs. <br><br> WELLS FARGO BANK, NATIONAL ASSOCIATION. <br><br> Defendants. | **COMPLAINT** <br><br> Civil No. <br><br> Magistrate |

## PARTIES, VENUE & JURISDICTION

1. Molina Mayra Molina ("Molina") is a resident of the State of. At all times relevant to this action, Molina was an employee of Wells Fargo Technologies, LLC, worked in the State of Utah, Utah County and was fully qualified for the job position she held.

2. Defendant Wells Fargo Bank National Association ("Wells Fargo" or "Employer") is a Corporation that at all times relevant to this action employed Molina in Utah County.

3. Wells Fargo has more than fifteen (15) employees in the state of Utah.

COMPLAINT – 1

4. The jurisdiction of the court is invoked to secure protection and redress deprivation of rights secured by federal laws which prohibit discrimination against employees because of their race, gender, and their disability under the ADA.

5. Jurisdiction of the Court over the federal claims asserted herein is invoked pursuant to 28 U.S.C. § 1343(a)(4) and 42 U.S.C. § 12117. The court has supplemental jurisdiction over the state law claims asserted herein pursuant to 28 U.S.C. § 1367(a).

6. The action properly lies in the District of Utah, Central Division pursuant to 28 U.S.C. § 1391(b) because the claim arose in the judicial district.

7. At all times relevant to the action Wells Fargo was subject to the jurisdiction of the court and subject to the applicable federal statutes and state law claims asserted herein.

8. Molina filed a timely charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") charging discrimination based on, *inter alia,* race, sex, disability, failure to accommodate, failure to engage in the interactive process, and wrongful termination.

9. Molina received a Right to Sue Notice from the EEOC on or about December 16, 2015 and filed the action within 90 days of her receipt of said Notice.

10. Molina has satisfied all administrative prerequisites associated with her claim of disability discrimination.

11. Molina was an employee working for a Wells Fargo from 2008 to 2011 and again from 2012 to 2015.

## FACTUAL ALLEGATIONS

**Failure to Engage in Interactive Process, Failure to Accommodate, Racial Discrimination, sexual discrimination, and Wrongful Termination.**

12. Molina is a female, is from Venezuela and has an accent, and has the disability epilepsy.

COMPLAINT – 2

13. Molina started to work for Wells Fargo in 2008 as a teller and after two years (in 2010) she was promoted to be a Personal Banker where she received awards for sales and customer satisfaction.

14. In the year 2011 Molina left Wells Fargo for personal reasons but was rehired approximately 1 year later the summer of in 2012 as a Service Manager 1.

15. Within in a year she was quickly promoted from Service Manager 1 to Service Manager 2.

16. During the time she worked for Wells Fargo, Molina received numerous award for excellent performance in her job.

17. At all times while she worked for Wells Fargo, Molina suffered from epilepsy for which she took medication.

18. The medication did not completely control her disability and she would have occasional seizures despite the fact that she took medication.

19. Molina's seizures were triggered by extremely stressful situations or environments.

20. These seizures can be avoided by allowing her to take breaks, to relax, or to take time off of work.

21. In approximately April of 2013 the branch that Molina worked in lost its manager and the majority of the responsibility to fill that manager's role fell upon Molina.

22. The loss of the manager left the branch understaffed and Molina was required to do her job and the job of the manager.

23. At the end of April her branch underwent it usual annual audit. During the time Molina worked longer and harder and experienced more stress than usual.

24. On May 9, 2013 due to the extra stress that she was experiencing Molina had a seizure at work.

25. When she had the seizure Molina was sitting at a desk with a high chair and she fell off the chair and hit her ribs against the desk.

26. During her seizure the branch called 911 and paramedics responded to the scene and cared for her.

27. Due to her injuries caused by her disability Molina had to take time off from work to recuperate.

28. Molina lost her driving privileges, a major life activity, for six (6) months as a result of the seizure.

29. Molina returned to work at her branch on May 29.

30. When she returned she was given notice that she would longer be working at that branch and that she was being transferred to a different branch in American Fork.

31. The move was a caused significant hardship on her.

32. Her current branch was near her daughter's day care and an easy drive for family members to pick up and drop off her daughter each day.

33. The branch in American Fork was a longer distance from her home, her daughter's school, and her daughter's day care.

34. The unexpected transfer to the new branch made it more difficult to get to work and care for her daughter.

35. In addition, when she began to work at the new branch Wells Fargo cut Molina's bonus level from Silver to Bronze which meant that she was making less money than before.

36. The manager at the new branch also began to make racist jokes about Latinos and began to embarrass Molina and make her feel uncomfortable in front of other employees with the racist Latino jokes.

37. In addition the branch manager at the new branch made Molina work harder and longer hours.

38. Other non-Latino employees were not required to work as hard and as long.

39. Due to her poor treatment at the new branch Molina requested a transfer back to her old branch, the transfer was granted, she was demoted but able to keep the same pay.

40. After Molina transferred back to her old branch she was began to volunteer with the Latin Initiative Program ("Initiative"), a program that helps Latinos attend college.

41. Due to her work with the Initiative Wells Fargo contacted Molina, and due to her connections with the Latin community, asked her to work help sign up new accounts with students at Utah Valley University.

42. Molina was very successful at signing up new accounts and in 2014 she began to apply for management positions again.

43. From 2014 to 2015 Molina applied at least nine (9) times to be a manager and Wells Fargo declined to promote her each time, despite her previous experience as a manager and her success at signing up new Wells Fargo accounts.

44. During this time Molina found out that Wells Fargo managers were holding raucous parties with Wells Fargo employees. The parties included alcohol, nudity, inappropriate videos, and "dare games."

45. The employees who attended these parties were the employees who were getting promoted.

46. Women who attended these parties were being promoted over women who did not attend these parties.

47. Molina refused to go to the parties and never received a promotion.

48. In the summer of 2015, during a particularly stressful point in her job, Molina was again denied promotion.

49. The stress she experienced as a result of her job and yet another denial of a promotion put Molina at a greater risk of having seizures.

50. In an effort to avoid a seizure Molina asked Human Resources for time off and told Human Resources that she needed the time off because she was a great risk of having a seizure.

51. Human Resources, knowing that she had epilepsy, told her that her epilepsy was not a disability and that she could not take time off.

52. Human Resources did offer to give her a new chair.

53. After Human Resources refused to accommodate her disability Molina asked her manager for time off in order to avoid a seizure.

54. Her manager, knowing that she had epilepsy, refused to let her take time off.

55. The manager told her that she might be able to take time off in three months.

56. Both Human Resources and her manager knew why she had requested the time off yet they still denied her the accommodation.

57. Within days of resigning Molina had another seizure and her driving privileges revoked by the state of Utah.

58. Molina resigned after Wells Fargo refused to accommodate her disability. Molina felt hopeless, she felt that due to her disability, her race, and her gender that she did not have any chances for promotion within the company.

59. Wells Fargo constructively terminated Molina through subjecting her to racism at work, sexually discriminating against her because she refused to attend wild parties, and because Wells Fargo would not accommodate her disability.

60. Molina felt that no reasonable person in her situation would tolerate such treatment and continue to work there.

## FIRST CAUSE OF ACTION
### (Violation of Title VII of the Civil Rights Act of 1964, As Amended by the Civil Rights Act of 1991 Employment Discrimination)

61. Molina incorporates by reference all paragraphs of the Complaint as set forth herein.

62. Wells Fargo has discriminated against Molina in the terms and conditions of her employment because of her race, gender and her disabilities, by the treatment of Molina in her employment and by terminating her employment, all in violation of Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991 by terminating her employment under the facts and circumstances described hereinabove.

63. The acts of Wells Fargo and its managers are alleged in the Factual Allegations section of the Complaint and are incorporated by reference herein.

64. The acts alleged above by Wells Fargo were in violation of Title VII of the Civil Rights Act of 1964, as amended and were acts of employment discrimination.

65. Said acts were willful and malicious and/or were acts that manifest a knowing and reckless indifference and disregard of the rights of Molina.

66. Wells Fargo was negligent in allowing the harassment to continue causing emotional distress to be suffered by Molina.

67. The acts of Wells Fargo and other employees and managers of Molina were acts performed within the course and scope of said individuals' and managers' employment acting in their individual capacities as supervisors and managers of Wells Fargo over Molina.

68. Wells Fargo constructively terminated Molina's employment after her last seizure. The epileptic seizure was her disability.

69. Molina had a goal of moving up through the management ranks at Wells Fargo, taking advantage of the career advancement training opportunities Wells Fargo provided.

70. Molina has been unable to procure employment that paid her as well as she was paid at Wells Fargo and that had with the same career advancement track as Wells Fargo.

## SECOND CAUSE OF ACTION
### (Violation of Americans with Disabilities Act (ADA))

71. Molina incorporates by reference all paragraphs of the Complaint as set forth herein.

72. At all times relevant hereto, Molina was an employee of Wells Fargo within the meaning of the ADA, 42 U.S.C. § 12111(4).

73. At all times relevant hereto, Wells Fargo had more than fifteen (15) employees, and was a covered entity within the meaning of the ADA, 42 U.S.C. §§12111(5), 12112(b).

74. At all times relevant hereto, Molina was disabled within the meaning of the ADA in that she had a disability, a record of a disability or was regarded as having a disability that substantially limited major life activities within the meaning of the ADA, 42 U.S.C. § 12102(1).

75. At all times relevant hereto, Molina was qualified to perform the essential functions of her job and did, in fact, perform the essential functions of her job at Wells Fargo with or without reasonable accommodation.

76. The ADA imposes upon employers an obligation to accommodate known disabilities of its employees.

77. The ADA also requires employers to engage in good faith in an interactive process with a disabled employee to determine reasonable accommodations for the employee.

78. The ADA also prohibits discrimination against individuals because of their disability.

79. As alleged above, Wells Fargo through its managers and employees knew of Molina's disability, her record of disability and/or regarded her as disabled.

80. As alleged above, Wells Fargo through its Human Resources Department, knew of Molina's disability, her record of disability and refused to give her reasonable accommodations for her disability.

81. As alleged above, Wells Fargo failed to accommodate Molina's disability, failed to engage in an interactive process with Molina regarding her disability and discriminated against Molina because of her disability in violation of the ADA.

82. Wells Fargo's failure to accommodate, engage in the interactive process and constructively terminate Molina because of her disability violated the ADA.

83. As alleged above, Wells Fargo constructively terminated Molina's employment because of her Disabilities, and/or constructively terminated Molina's employment because of her seizures or directly caused by her Disabilities, all in violation of the ADA.

84. Wells Fargo constructively terminated Molina's employment after her last seizure. The epileptic seizure was her disability.

85. Molina had a goal of moving up through the management ranks at Wells Fargo, taking advantage of the career advancement training opportunities Wells Fargo provided.

86. Molina has been unable to procure employment that paid her as well as she was paid at Wells Fargo and that had with the same career advancement track as Wells Fargo.

87. As a result, Molina is entitled to recover damages for lost wages, past and future, and other lost benefits and compensatory damages in an amount to be proven at trial, plus attorney's fees and costs incurred in bringing this action.

88. The conduct of Wells Fargo toward Molina was willful and malicious and/or manifested a knowing and reckless indifference toward and disregard of Molina's interests and rights and her desire for continued employment, entitling Molina to an award of punitive damages in an amount to be proven at trial.

89. Molina specifically incorporates by reference the factual allegations in the preceding paragraphs of the Complaint as each were fully set forth herein.

### THIRD CAUSE OF ACTION
### (Racial Discrimination)

90. Molina incorporates by reference all paragraphs of the Complaint as set forth herein.

91. During the course of Molina's employment with Wells Fargo, Wells Fargo discriminated against Molina in the terms, conditions, and privileges of employment in various ways, in substantial part because of her race, in violation of Title VII of the Civil Rights Act of 1964.

92. As alleged above, Molina was subjected to unwelcome, offensive, and harassing racial discriminatory behavior and conduct during her employment with Wells Fargo by reason of her race.

93. As alleged above, the unwelcome, offensive harassing treatment, behavior, and discrimination came from managers of Wells Fargo and continued until Wells Fargo constructively terminated her employment.

94. The managers' assignment to Molina was within the course and scope of the manager's employment giving rise to liability of Wells Fargo.

95. Wells Fargo had policies against such treatment, behavior and discrimination.

96. Wells Fargo imposed on its managers the duty to enforce its policies against such treatment, behavior and discrimination, and imposed the duty not to engage in such treatment, behavior or discrimination.

97. The acts of the managers are imputed to Wells Fargo because of their managerial position over Molina and because of the duty of these managers not to engage in such discrimination themselves against the employees they are charged to protect from such discrimination.

98. Wells Fargo through its managers failed to protect Molina from such hostile treatment, offensive behavior and discrimination.

99. Wells Fargo was negligent in failing to protect Molina from the type of behavior and discrimination and was negligent in failing to stop the hostile treatment, offensive behavior and discrimination.

100. Wells Fargo's management level employees knew, or in the exercise of reasonable care should have known that it was failing to remedy or prevent the treatment, behavior and discrimination.

101. Wells Fargo knew of the behavior and discrimination against Molina because its managers, themselves, were engaging in the treatment, behavior and discrimination.

102. As alleged above, the unwelcome, offensive and harassing treatment, behavior and discriminatory conduct was sufficiently severe and pervasive as to unreasonably interfere with

Molina's mental health, and emotional well-being, as it created an intimidating, hostile and offensive working environment.

103. Molina suffered mental anguish and suffering as a consequence of the mistreatment and discrimination by Wells Fargo managers and employees.

104. Molina had a goal of moving up through the management ranks at Wells Fargo, taking advantage of the career advancement training opportunities Wells Fargo provided.

105. Molina has been unable to procure employment that paid her as well as she was paid at Wells Fargo and that had with the same career advancement track as Wells Fargo.

106. As a result, Molina is entitled to recover damages for lost wages, past and future, and other lost benefits and compensatory damages in an amount to be proven at trial, plus attorney's fees and costs incurred in bringing this action.

## FOURTH CAUSE OF ACTION
### (Punitive damages)

107. Molina incorporates by reference all paragraphs of the Complaint as set forth herein.

108. The acts or omissions of Wells Fargo, as alleged herein, were willful, malicious, and in knowing and reckless indifference toward, and a disregard of, Molina's rights.

109. Defendant Wells Fargo is liable to Molina for punitive damages.

## FIFTH CAUSE OF ACTION
### (Sexual Harassment)

110. Molina incorporates by reference all paragraphs of the Complaint as set forth herein.

111. During the course of Molina's employment with Wells Fargo, Wells Fargo by and through its managers discriminated against Molina in the terms, conditions, and privileges of

employment in various ways, in substantial part because of her sex, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et. seq.

112. Molina was denied promotions during her employment with Wells Fargo by reason of her gender.

113. Due to the fact that she did not attend offensive and demeaning parties and participate in drunken sexual behavior she was denied promotions by her managers.

114. Wells Fargo took no actions to prevent the sexual discrimination from occurring.

115. Defendant Wells Fargo is liable to Molina.

### SIXTH CAUSE OF AUCTION
(Constructive Termination)

116. Molina incorporates by reference all paragraphs of the Complaint as set forth herein.

117. Wells Fargo, by refusing to promote Molina because of her disability, her race and her gender discriminated against her.

118. Wells Fargo's conduct created intolerable working conditions and Molina had no other option than to quit her job.

119. Molina felt that no reasonable person in her situation would continue to work under such conditions.

120. Wells Fargo is liable to Molina its actions towards her were conducted in the course and scope of her employment with Wells Fargo.

### SEVENTH CAUSE OF ACTION
(Negligent Infliction of Emotional Distress)

121. Molina incorporates by reference all paragraphs of the Complaint as set forth herein.

122. In the State of Utah the tort of negligent infliction of emotional distress occurs when a person or entity "...should have realized that her conduct involved an unreasonable risk of causing the distress, otherwise than by knowledge of the harm or peril of a third person, and...from facts known to him, should have realized that the distress, if it were caused, might result in illness or bodily harm." *Anderson Development Co. v. Tobias*, 116 P.3d 323, 339, 2005 UT 36, ¶ 57 (Utah. 2005).

123. Wells Fargo knew or should have known of the distress that having a seizure at work causes Molina.

124. Wells Fargo should have realized that by failing to give Molina reasonable accommodations for her disability it was subjecting her to unreasonable risk of harm and emotional distress.

125. Molina did in fact suffer physical harm because Wells Fargo failed to accommodate her requests for accommodations.

126. Wells Fargo should have known that subjecting Molina to racist jokes in the presence of other employees would cause her emotional distress.

127. Wells Fargo should have known that refusing to promote Molina because of her race would cause her emotional distress.

128. Well Fargo should have known that refusing to promote Molina because she would not participate in raucous parties would cause her emotional distress.

129. Molina is entitled to receive compensation for her suffering as allowed under Utah Law.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff prays for relief and judgment against Defendant in an amount which will compensate her for:

 A. Violation of his civil rights under Title VII of the Civil Rights Act of 1964 and the Americans With Disabilities Act.

 B. Compensatory, general and special damages including lost wages, past and future, and/or impairment of power to earn money, emotional pain, emotional distress and humiliation, past and future, past and future medical expenses in an amount to be proven at trial;

 C. Punitive damages for an amount to be proven at trial;

 D. Pre-judgment and post-judgment interest;

 E. Attorneys' fees pursuant to statute, and costs incurred in prosecuting this action;

 F. Any other and further relief that the court considers proper.

## JURY TRIAL DEMAND

Plaintiff requests a jury trial on all questions of fact raised in this Amended Complaint.

DATED this day of 15th day of March, 2015.

      FILLMORE SPENCER, LLC

      _/s/ Jared B. Stubbs_
      Jared B. Stubbs
      Mark D. Stubbs
      Attorneys for Plaintiff