## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| MAYRA MOLINA,<br><br>Plaintiff,<br><br>v.<br><br>WELLS FARGO BANK, NATIONAL ASSOCIATION,<br><br>Defendant. | **MEMORANDUM DECISION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS FOR FAILURE TO STATE A CLAIM**<br><br>Case No. 2:16-cv-207-DN<br><br>District Judge David Nuffer |

Plaintiff Mayra Molina alleges that Defendant Wells Fargo Bank, National Association, discriminated against her on the basis of race, sex, and disability in violation of Title VII of the Civil Rights Act of 1964 and the Americans with Disabilities Act (ADA).[1] Because of the discrimination, Molina alleges that Wells Fargo constructively terminated her and negligently inflicted emotional distress on her.[2] Molina further alleges that Wells Fargo improperly refused to give her leave under the Family Medical Leave Act (FMLA) for her serious medical condition.[3] Molina also seeks punitive damages.[4]

Wells Fargo moves to dismiss all of Molina's causes of action under Rule 12(b)(6) of the Federal Rules of Civil Procedure for failure to state a claim upon which relief may be granted.[5]

---

[1] First Amended Complaint (Complaint) ¶¶ 73, 93, 103, 123, docket no. 4, filed May 4, 2016.

[2] *Id.* ¶¶ 70, 130–33, 135–37.

[3] *Id.* ¶¶ 139–46.

[4] *Id.* ¶¶ 120–21.

[5] Defendant Wells Fargo Bank, National Association's Motion to Dismiss and Supporting Memorandum of Points and Authorities (Motion to Dismiss) at 1–2, docket no. 8, filed June 14, 2016.

Molina opposes the motion.[6] In the event that Wells Fargo's Motion to Dismiss is granted, Molina requests that she be given leave to file an amended complaint to cure the deficiencies of her Complaint.[7] Wells Fargo replied in support of the motion.[8]

Because most of Molina's causes of action do not state a claim for which relief may be granted, are not separate causes of action, are duplicative, or are precluded by state law, Wells Fargo's Motion to Dismiss is GRANTED IN PART and DENIED IN PART. In addition, Molina's request[9] to file an amended complaint is DENIED because she does not satisfy Federal Rule of Civil Procedure 7(b)(1).

---

[6] Response to Defendant's Motion to Dismiss (Molina's Response), docket no. 13-1, filed July 5, 2016.

[7] *Id.* at 8.

[8] Defendant Wells Fargo Bank, National Association's Reply Memorandum in Support of Its Motion to Dismiss (Wells Fargo Reply), docket no. 14, filed July 19, 2016.

[9] Molina's Response at 8.

# Contents

Standard of Review ................................................................................................... 3
Factual Allegations ................................................................................................... 4
Discussion ................................................................................................................. 7
    Molina's First, Fourth, and Seventh Causes of Action are Dismissed .............. 9
        1.    Molina's First Cause of Action Fails to State a Unique Claim .................. 9
        2.    Molina's Fourth Cause of Action is Not a Separate Claim Because
                Punitive Damages is a Remedy ................................................................ 10
        3.    Molina's Seventh Cause of Action is Precluded by Utah Law ................ 11
    Molina's Second Cause of Action Pleads Sufficient Plausible Facts to Show That Molina
        Suffered Discrimination Based on Her Disability ................................................ 12
    Molina's Third Cause of Action Pleads Sufficient Facts to Show That Molina Was
        Subjected to Discrimination .................................................................................. 14
        1.    Molina Adequately Pleads That She Was Denied Promotion Based on a
                Protected Classification. ........................................................................... 15
        2.    Molina Adequately Pleads That She Was Subjected to a Hostile Work
                Environment. ............................................................................................ 17
    Molina's Fifth Cause of Action Does Not Allege Sufficient Facts to Demonstrate That
        Sexual Conduct Was a Condition of Employment Benefits. ............................... 19
    Molina's Sixth Cause of Action is a Separate Claim ......................................... 22
    Molina's Eighth Cause of Action Alleges Sufficient Facts to Show That Molina Was
        Entitled to FMLA Leave. ..................................................................................... 23
    Molina's Request for Leave to Amend is Denied Because Her Request is Not a Motion.
        ................................................................................................................................ 25
Order ....................................................................................................................... 27

## STANDARD OF REVIEW

A defendant is entitled to dismissal under Rule 12(b)(6) of the Federal Rules of Civil

Procedure when the "complaint alone is legally [in]sufficient to state a claim for which relief

may be granted."[10] The factual allegations in the complaint are viewed in the "light most

favorable to the plaintiff."[11] But the basic pleading requirements "demand[] more than an

unadorned, the-defendant-unlawfully-harmed-me accusation."[12] "A pleading that offers 'labels

and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'"[13]

---

[10] *Miller v. Glanz*, 948 F.2d 1562, 1565 (10th Cir. 1991).

[11] ***Ridge at** Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (citing *Beedle v. Wilson*, 422 F.3d 1059, 1063 (10th Cir. 2005)).

[12] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

[13] *Id.* (quoting *Twombly*, 550 U.S. at 555 (2007)).

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.' A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[14]

## FACTUAL ALLEGATIONS[15]

This case arises out of Wells Fargo's alleged discrimination against Molina when she was employed by Wells Fargo. Venezuelan by birth, Molina has an accent and suffers from epilepsy.[16] Molina was successfully employed at Wells Fargo from 2008 to 2011 and 2012 to 2015.[17] Her success was evident in her promotions to Personal Banker, Service Manager 1, and Service Manager 2, as well her awards for excellent job performance, sales, and customer satisfaction.[18]

After her promotion to Service Manager 2, and while she was working at a Wells Fargo branch in Orem, Utah, Molina had a seizure at work.[19] Her seizure was caused from the added stress of having to not only fulfill her own responsibilities but also the responsibilities belonging to the vacant branch manager position.[20] Unfortunately, the same month the branch manager left, Wells Fargo had its annual audit.[21] So on top of fulfilling additional duties, Molina had to work

---

[14] *Id.* (citations omitted) (quoting *Twombly*, 550 U.S. at 570).

[15] These facts are taken from Molina's Complaint.

[16] Complaint ¶ 12.

[17] *Id.* ¶¶ 13–15, 52–68.

[18] *Id.* ¶¶ 13, 16–17.

[19] *Id.* ¶¶ 15–16, 24–25.

[20] *Id.* ¶¶ 22–23.

[21] *Id.* ¶¶ 22–24.

longer and harder.[22] All of these stresses culminated in Molina's seizure, which required her to take several days off to recuperate.[23]

As a result of the seizure, Molina's driving privileges were revoked for six months.[24] Even though she lost her driving privileges, Molina was transferred to a Wells Fargo branch in American Fork, Utah, which was farther from her home.[25] Molina also received less pay when she was transferred because her bonus level was reduced.[26] At this new branch, Molina's manager made racist jokes about Latinos, which embarrassed Molina and made her feel uncomfortable.[27] Molina's manager also made her work harder and longer than non-Latino employees.[28] Because of this treatment, Molina requested that she return to the branch in Orem.[29] Wells Fargo granted her request.[30]

Upon her return to the Orem branch, Molina was demoted but she still kept the same pay.[31] After her demotion, Molina applied at least nine times to be a manager.[32] Each time she was denied promotion.[33] Molina's American Fork manager, R.D., told another manager not to promote Molina because she was a single mother.[34] During this time, Wells Fargo managers

---

[22] *Id.* ¶ 24.

[23] *Id.* ¶¶ 25–28.

[24] *Id.* ¶ 30.

[25] *Id.* ¶¶ 31, 35.

[26] *Id.* ¶ 38.

[27] *Id.* ¶ 39.

[28] *Id.* ¶ 40–41.

[29] *Id.* ¶ 42.

[30] *Id.*

[31] *Id.*

[32] *Id.* ¶ 46.

[33] *Id.*

[34] *Id.* ¶¶ 39, 104, 124–25.

were holding parties that involved alcohol, nudity, sexual behavior, dare games, and inappropriate videos.[35] Molina did not attend these parties.[36] Many of the employees who did attend these parties were promoted, including at least one woman.[37] In addition, although some women and Latino Americans were being promoted, most of those promoted were younger white males.[38] None of those promoted were born outside of the United States or had an accent.[39]

Molina again applied for a promotion in the summer of 2015 but was denied.[40] Once again, Wells Fargo was giving her more work than non-Latino employees.[41] Because of the stress associated with repeatedly being denied promotion and with having to perform additional work, Molina knew she was at risk of having another seizure.[42] She also knew that she could avoid the seizure by taking breaks or taking time off from work in order to reduce stress.[43] So, to avoid the seizure, Molina asked Human Resources for time off under the FMLA.[44] Human Resources responded by saying that Molina's epilepsy was not a disability and that Molina did not qualify for leave under the FMLA.[45] Although Molina's request for time off for her epilepsy was denied, Human Resources did offer to give Molina a new chair.[46]

---

[35] *Id.* ¶¶ 48, 126.

[36] *Id.* ¶ 51.

[37] *Id.* ¶¶ 49–50.

[38] *Id.* ¶ 47.

[39] *Id.*

[40] *Id.* ¶ 52.

[41] *Id.* ¶ 56.

[42] *Id.* ¶¶ 56, 59.

[43] *Id.* ¶ 58.

[44] *Id.* ¶ 60.

[45] *Id.* ¶ 61.

[46] *Id.* ¶¶ 61–62, 66.

Molina then went to her manager and asked for time off to avoid the seizure.[47] Her manager denied the request, saying Molina might be able to take time off in three months.[48] At this point, Molina resigned because she felt hopeless.[49] She felt that her disability, gender, and race prevented her from being promoted within the company.[50] Days after resigning, Molina had another seizure, which once again resulted in the revocation of her driving privileges.[51]

## DISCUSSION

Molina's complaint contains eight causes of action:

(1) racial, gender, and disability discrimination in violation of Title VII;

(2) disability discrimination in violation of the ADA;

(3) racial discrimination in violation of Title VII;

(4) punitive damages;

(5) gender discrimination in violation of Title VII;

(6) constructive termination;

(7) negligent infliction of emotional distress; and

(8) interference with FMLA rights.[52]

Wells Fargo argues that the second, third, fifth, and eighth causes of action should be dismissed because Molina fails to plead enough factual allegations to support plausible claims.[53] Wells Fargo also argues that the first cause of action should be dismissed because it duplicates

---

[47] *Id.* ¶ 63.

[48] *Id.* ¶¶ 64–65.

[49] *Id.* ¶ 68.

[50] *Id.*

[51] *Id.* ¶ 67.

[52] *Id.* ¶¶ 72–146.

[53] Motion to Dismiss at 6, 8, 10–11.

the second, third and fifth causes of action.[54] Wells Fargo argues that the fourth and sixth causes of action are not separate causes of action.[55] Finally, Wells Fargo seeks to dismiss the seventh cause of action by arguing that it is precluded by the Utah Workers' Compensation Act and Utah Anti-Discrimination Act.[56]

Molina responds that the second, third, fifth, and eighth causes of action are plausible on their face.[57] In addition, Molina argues that the sixth cause of action is a separate claim.[58] Molina fails to respond to Wells Fargo's arguments that the first cause of action duplicates the second, third, and fifth causes of action, that the fourth cause of action is not a separate claim, and that the seventh cause of action is precluded by state law.[59]

Her opposition memorandum requests: "[S]hould the Court disagree and decide that dismissal of the Complaint is appropriate, Molina requests the opportunity to cure any deficiencies that the Court may determine there to be by amending the Complaint within thirty days of the Court's order."[60] Molina argues that "[a]llowing [her] to amend her complaint a second time would not cause any prejudice to the Defendant."[61]

Molina's first cause of action is unnecessarily duplicative of her second, third, and fifth causes of action; her fourth cause of action is not a separate claim for which relief may be granted; and her seventh cause of action is precluded by Utah law. Molina's second, third, sixth,

---

[54] *Id.* at 11.

[55] *Id.* at 14.

[56] *Id.* at 12.

[57] Molina's Response at 2–7.

[58] *Id.* at 7–8.

[59] *See* Molina's Response.

[60] *Id.* at 8.

[61] *Id.*

and eighth causes of action do state claims for which relief may be granted. Molina's fifth cause of action, however, does not state a claim for which relief may be granted. Therefore, Wells Fargo's Motion to Dismiss is GRANTED IN PART and DENIED IN PART.

**Molina's First, Fourth, and Seventh Causes of Action are Dismissed**

Wells Fargo argues that Molina's first, fourth, and seventh causes of action may be dismissed because she did not respond to Wells Fargo's Motion to Dismiss as to these causes of actions.[62] Wells Fargo mainly bases this failure-to-respond argument on Local Rule 7-1(d),[63] which states that "[f]ailure to respond timely to a motion may result in the court's granting the motion without further notice."[64] This argument is incorrect. When considering whether a district court may grant a motion to dismiss based solely on Local Rule 7-1(d), the Tenth Circuit explicitly held that "a district court may not grant a motion to dismiss for failure to state a claim 'merely because [a party] failed to file a response.'"[65] "[T]he district court must still examine the allegations in the plaintiff's complaint and determine whether the plaintiff has stated a claim upon which relief can be granted."[66]

### 1. Molina's First Cause of Action Fails to State a Unique Claim

Molina's first cause of action states that "Wells Fargo has discriminated against Molina in the terms and conditions of her employment because of her race, gender and her disabilities, by the treatment of Molina in her employment and by terminating her employment, all in violation of Title VII."[67] Wells Fargo argues that this cause of action is duplicative because

---

[62] Wells Fargo Reply at 8.

[63] *Id.* at 8 n.31.

[64] DUCivR 7-1(d).

[65] *Issa v. Comp USA*, 354 F.3d 1174, 1177 (10th Cir. 2003).

[66] *Id.* at 1178.

[67] Complaint ¶ 73.

Molina did not plead any "factual allegations or legal bases for relief in her First Cause of Action independent from those raised in her Second, Third, and Fifth Causes of Action."[68] Molina does not oppose Wells Fargo's argument.[69]

At the outset, the portion of Molina's first cause of action having to do with discrimination based on disability in violation of Title VII is dismissed because the disabled are not a protected class under Title VII. Title VII only protects an individual from being discriminated against based on "race, color, religion, sex, or national origin."[70]

The remaining two claims—race and gender discrimination in violation of Title VII—in Molina's first cause of action are duplicative of her third and fifth causes of action.[71] When a claim is duplicative, it may be dismissed.[72] Therefore, Wells Fargo's Motion to Dismiss as to Molina's first cause of action is GRANTED.

## 2. Molina's Fourth Cause of Action is Not a Separate Claim Because Punitive Damages is a Remedy

Wells Fargo argues that punitive damages is not "a stand-alone claim," and that "[p]unitive damages are a form of damages that may or may not be available depending on the statute at issue and the facts as they are proved in the action."[73] Molina does not respond to this argument.[74]

---

[68] Motion to Dismiss at 11–12.

[69] *See* Molina's Response.

[70] 42 U.S.C. § 2000e-2(a)(1) (2012).

[71] *Compare* Complaint ¶¶ 72–81 *with id.* ¶¶ 102–118 *and* 122–28.

[72] *Stewart v. Stoller*, No. 2:07-CV-552-DB-EJF, 2014 WL 4851861, at *1 (D. Utah Sept. 29, 2014); *Warnick v. Briggs*, No. 2:04-CV-0360-DAK, 2005 WL 1566669, at *9 (D. Utah July 1, 2005).

[73] Motion to Dismiss at 14.

[74] *See* Molina's Response.

Wells Fargo is correct that punitive damages is not a separate cause of action. Instead, because it is a remedy, punitive damages is "an extension" of Molina's other causes of action.[75] Therefore, Wells Fargo's Motion to Dismiss as to Molina's fourth cause of action is GRANTED.

### 3. Molina's Seventh Cause of Action is Precluded by Utah Law

Molina alleges the common law tort of negligent infliction of emotional distress (NIED) because "Wells Fargo . . . should have realized that its racial discrimination, gender discrimination, and disability discrimination created an unreasonable risk of physical harm and emotional distress."[76] Wells Fargo argues that this tort is "barred by both the Utah Workers' Compensation Act and the Utah Anti-Discrimination Act."[77] Molina does not respond to this argument.[78]

Wells Fargo is correct. As explained in *Giddings v. Utah Transit Authority*,[79] Molina's NIED claim is precluded by both the Utah Workers' Compensation Act and the Utah Antidiscrimination Act.[80] In *Giddings*, the court explained that negligence claims in which "physical or mental injury is an indispensable element" are precluded by the Utah Workers' Compensation Act.[81] The court also explained that the Utah Anti-Discrimination Act "[precludes] all common law causes of action for discrimination, retaliation, or harassment by an

---

[75] *Lambertsen v. Utah Dep't of Corr.*, 922 F. Supp. 533, 538 (D. Utah 1995), *aff'd*, 79 F.3d 1024 (10th Cir. 1996); *West v. Boeing Co.*, 851 F. Supp. 395, 400-01 (D. Kan. 1994).

[76] Complaint ¶ 135.

[77] Motion to Dismiss at 12.

[78] *See* Molina's Response.

[79] 107 F. Supp. 3d 1205 (D. Utah 2015).

[80] *Id.* at 1209–12.

[81] *Id.* at 1211.

employer on the basis of sex, race, color, pregnancy, age, religion, national origin, or disability."[82]

Here, mental injury is an indispensable element of Molina's NIED claim and thus, this claim is precluded by the Utah Workers' Compensation Act.[83] In addition, Molina's NIED claim may be precluded by the Utah Anti-Discrimination Act because it is "grounded on allegations and injuries of discrimination and harassment based on gender,"[84] race, and disability. But because Molina's claim for negligent infliction of emotional distress is precluded by the Utah Workers' Compensation Act, the question of whether the Utah Anti-Discrimination Act precludes this claim need not be considered further. Therefore, Wells Fargo's Motion to Dismiss as to Molina's seventh cause of action is GRANTED.

**Molina's Second Cause of Action Pleads Sufficient Plausible Facts to Show That Molina Suffered Discrimination Based on Her Disability**

Wells Fargo argues that Molina did not plead any facts that show her requested accommodation was reasonable or medically necessary.[85] Molina says that she adequately pleaded discrimination because Wells Fargo did not make a reasonable accommodation by granting her request for time off to avoid an epileptic seizure.[86]

Contrary to Wells Fargo's assertion regarding medical necessity, Molina does not need to plead that her accommodation or request for leave was medically necessary. Instead, the

---

[82] *Id.* at 1211–12 (quoting *Gottling v. P.R. Inc.*, 61 P.3d 989, 997 (Utah 2002)).

[83] *Mounteer v. Utah Power & Light Co.*, 823 P.2d 1055, 1058–59 (Utah 1991); *Retherford v. AT&T Commc'ns of Mountain States, Inc.*, 844 P.2d 949, 964–65 (Utah 1992).

[84] *Giddings*, 107 F. Supp. 3d at 1212. *But see Retherford*, 844 P.2d at 967 (holding that the Utah Anti-Discrimination Act "d[id] not preempt Retherford's claim[] for . . . intentional infliction of emotional distress" because the injury of mental anguish was distinct from the injury of discriminatory retaliation).

[85] Wells Fargo Reply at 3.

[86] Molina's Response at 2–3.

accommodation need only be reasonable.[87] Indeed, Wells Fargo does not point to any case that suggests otherwise.[88]

Under the ADA, an employer cannot "discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment."[89] Molina may establish a claim under this provision if she shows that she "(1) is a disabled person as defined by the ADA; (2) is qualified, with or without reasonable accommodation, to perform the essential functions of the job held or desired; and (3) suffered discrimination by an employer or prospective employer because of that disability."[90] As part of the third element, the phrase "discriminate against a qualified individual on the basis of disability" in the ADA includes situations in which the employer does "not mak[e] reasonable accommodations to the known physical or mental limitations of an otherwise qualified individual with a disability."[91] A "reasonable accommodation" can include " modified work schedules . . . and other similar accommodations for individuals with disabilities."[92] In addition, "[a]n allowance of time for medical care or treatment may constitute a reasonable accommodation."[93]

Here, Wells Fargo knew that Molina had epilepsy—a "physical or mental limitation[]"— and that Molina was requesting time off for her disability.[94] Instead of considering whether a

---

[89] 42 U.S.C. § 12112(a) (2012).

[89] 42 U.S.C. § 12112(a) (2012).

[89] 42 U.S.C. § 12112(a) (2012).

[90] *Zwygart v. Bd. of Cty. Comm'rs of Jefferson Cty.*, 483 F.3d 1086, 1090 (10th Cir. 2007); *see Siemon v. AT&T Corp.*, 117 F.3d 1173, 1175 (10th Cir. 1997).

[91] 42 U.S.C. § 12112(b)(5)(A).

[92] *Id.* § 12111(9)(B).

[93] *EEOC v. C.R. England, Inc.*, 644 F.3d 1028, 1048 (10th Cir. 2011) (quoting *Rascon v. U S W. Commc'ns, Inc.*, 143 F.3d 1324, 1333–34 (10th Cir. 1998)).

[94] Complaint ¶¶ 60–66.

"modified work schedule[]," "time for medical care or treatment," or other similar accommodation would be a reasonable accommodation, Wells Fargo simply denied Molina's requested accommodation.[95] Specifically, Human Resources "told [Molina] that her epilepsy was not a disability and that [Molina] could not take time off work because she did not qualify for FMLA."[96] Molina's manager, after denying the request for leave, said that Molina "might be able to take time off in three months."[97] Construing these allegations in the light most favorable to Molina, Human Resources and Molina's manager did not attempt to reasonably accommodate Molina's disability. Therefore, Molina sufficiently pleaded that Wells Fargo discriminated against her because of her disability by not making a reasonable accommodation in accordance with the ADA. Consequently, Wells Fargo's Motion to Dismiss Molina's second cause of action is DENIED.

**Molina's Third Cause of Action Pleads Sufficient Facts to Show That Molina Was Subjected to Discrimination.**

Title VII makes it unlawful "for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race . . . or national origin."[98] Molina makes two race-based discrimination claims in her third cause of action: failure-to-promote and hostile work environment.[99]

---

[95] *Id.* ¶ 66.

[96] *Id.* ¶ 61.

[97] *Id.* ¶ 65.

[98] 42 U.S.C. § 2000e-2(a)(1).

[99] Complaint ¶¶ 102–118; Molina's Response at 5–7.

1.  **Molina Adequately Pleads That She Was Denied Promotion Based on a Protected Classification.**

Wells Fargo argues that Molina did not plead sufficient facts because she did not identify the positions to which she applied or the circumstances surrounding each denial of promotion, and that Molina admitted that other Latino Americans were promoted into the unidentified positions.[100] Beyond the lack of factual allegations, Wells Fargo also argues that Molina's failure-to-promote claim is actually based on national origin—not race—because Molina relies on allegations that Wells Fargo did not promote individuals who were born outside of the United States and who spoke with an accent.[101] Finally, Wells Fargo argues that Molina's promotions in the past show that she was not denied promotion because of her race.[102]

Molina argues that Wells Fargo is asking for a level of specificity that is not required.[103] Molina also argues that her allegations about Wells Fargo promoting only employees who were born in the United States and who did not have an accent, as well as her allegations that she worked as a manager in the past and was denied at least nine times for managerial positions, show that she applied and qualified for managerial positions and was discriminated against because of her race.[104] Molina does not use the words "national origin" in her Complaint.[105]

Molina is correct. To establish a failure-to-promote claim, Molina must "demonstrat[e] that: (1) she was a member of a protected class; (2) she applied for and was qualified for the

---

[100] Motion to Dismiss at 9; Wells Fargo Reply at 5, 10.

[101] Wells Fargo Reply at 5.

[102] *Id.* at 5–6.

[103] Molina's Response at 6.

[104] *Id.* at 6–7.

[105] *See* Complaint.

position; (3) despite being qualified she was rejected; and (4) after she was rejected, the position was filled."[106]

First, Molina sufficiently pleaded that she was a member of a protected class. Wells Fargo's attempt to undermine Molina's failure-to-promote claim because it rests on allegations that relate to national origin is unpersuasive. "[P]leadings must be liberally construed."[107] Although Molina's third cause of action only refers to racial discrimination,[108] Molina pleads that what distinguished her from those promoted is that those promoted, including the Latino Americans, "were [not] born outside of the United States" and did not have accents.[109] As Wells Fargo notes,[110] these allegations relate to national origin and not race.[111] But this does not matter because national origin is a protected class under Title VII.[112]

Second, contrary to Wells Fargo's arguments, Molina has pleaded sufficient factual allegations that suggest she applied and qualified for the managerial positions to which she applied. Although not describing in detail the circumstances regarding each denial of promotion and not giving the title for each position, Molina pleaded that sometime after she was demoted she once again applied for managerial positions.[113] She also pleaded that she was promoted in

---

[106] *Jones v. Barnhart*, 349 F.3d 1260, 1266 (10th Cir. 2003).

[107] *Archuleta v. Wagner*, 523 F.3d 1278, 1283 (10th Cir. 2008) (quoting *Ruiz v. McDonnell*, 299 F.3d 1173, 1181 (10th Cir. 2002)).

[108] Complaint ¶¶ 102–03.

[109] *Id.* ¶ 47.

[110] Wells Fargo Reply at 5.

[111] *Espinoza v. Farah Mfg. Co.*, 414 U.S. 86, 88–89 (1973) (stating that the term "national origin" in Title VII "refers to the country where a person was born, or, more broadly, the country from which his or her ancestors came," is synonymous with the term "ancestry," and does not include discrimination based on citizenship); *Zokari v. Gates*, 561 F.3d 1076, 1090 (10th Cir. 2009).

[112] 42 U.S.C. § 2000e-2(a)(1).

[113] Complaint ¶¶ 42, 46.

the past at least three times, and at least two of those promotions were to managerial positions.[114] In addition, she pleaded that she had been given awards for sales, customer satisfaction, and excellent job performance, and, at the time she was applying for promotions, Molina pleaded that she was "very successful at signing up new accounts."[115] Construing the Complaint in Molina's favor, these allegations support the inference that Molina applied and qualified for the managerial positions to which she applied.

Therefore, because these are the only prongs challenged, Wells Fargo's Motion to Dismiss Molina's failure-to-promote claim in her third cause of action is DENIED.

### 2. Molina Adequately Pleads That She Was Subjected to a Hostile Work Environment.

Wells Fargo argues that Molina did not plead factual allegations that show that the discriminatory remarks against her were pervasive because "[she] does not allege what or how many jokes were made, how they involved race, how she felt uncomfortable, or when any of these vague incidents supposedly occurred."[116] In addition, Wells Fargo argues that Molina did not plead that she was treated differently than similarly situated persons—non-Latino managers—when she says that she was required to work harder and longer than "non-Latino employees."[117] Molina responds that she is only required to plead sufficient factual allegations that show a generally hostile work environment, and that Wells Fargo is thus asking her to plead a level of specificity that is not required.[118]

---

[114] *Id.* ¶¶ 13, 16.

[115] *Id.* ¶¶ 13, 17, 45.

[116] Motion to Dismiss at 9.

[117] *Id.*; Wells Fargo Reply at 4.

[118] Molina's Response at 5–6.

To establish a hostile work environment claim, Molina must satisfy two elements: (1) that "'the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment,' and [(2)] that the victim 'was targeted for harassment because of [her] race or national origin.'"[119] Although "the word 'pervasive' is not a counting measure,"[120] "the frequency, content, and context of the derogatory statements" are to be considered.[121] Molina "must show 'more than a few isolated incidents of racial enmity.'"[122] Also, "run-of-the-mill boorish, juvenile, or annoying behavior that is not uncommon in American workplaces is not the stuff of a Title VII hostile work environment claim."[123]

At this stage of the litigation, Molina sufficiently pleads that she was subjected to a racially hostile work environment. Molina pleaded that the jokes were "racist"; the jokes were about Latinos; these jokes were said in front of other employees; Molina felt embarrassed and uncomfortable because of these jokes; she was "made" to work harder and longer than non-Latino employees; and these events occurred after she was transferred to the Wells Fargo branch in American Fork.[124] Without these factual allegations, an allegation that a work environment is hostile would be "merely conclusory."[125] Instead, Molina demonstrated that it is plausible her work environment was racially hostile because she gave context about where, when, and to

---

[119] *Hernandez v. Valley View Hosp. Ass'n*, 684 F.3d 950, 957 (10th Cir. 2012) (quoting *Morris v. City of Colorado Springs*, 666 F.3d 654, 663–64 (10th Cir. 2012)).

[120] *Id.* at 958–59 (quoting *Herrera v. Lufkin Indus., Inc.*, 474 F.3d 675, 680 n.3 (10th Cir. 2007)).

[121] *Id.* at 959.

[122] *Bolden v. PRC Inc.*, 43 F.3d 545, 551 (10th Cir. 1994) (quoting *Hicks v. Gates Rubber Co.*, 833 F.2d 1406, 1412 (10th Cir. 1987)).

[123] *Id.*

[124] Complaint ¶¶ 39–41.

[125] *Moya v. Schollenbarger*, 465 F.3d 444, 457 (10th Cir. 2006).

whom the jokes were told. Molina also sufficiently explained that the jokes' content concerned Latinos, and that the Latino jokes seemed to continue until she was transferred from the American Fork branch. Although her pleading survives a motion to dismiss,[126] Molina must meet any motion for summary judgment by more detail such as the actual jokes that were told to her and other employees, and the number of hostile incidents, their context and timing.[127] Therefore, Wells Fargo's Motion to Dismiss Molina's hostile work environment claim in her third cause of action is DENIED.

**Molina's Fifth Cause of Action Does Not Allege Sufficient Facts to Demonstrate That Sexual Conduct Was a Condition of Employment Benefits.**

Wells Fargo contends that "Molina does not allege that she (or any other woman) was ever propositioned or pressured by management to attend the [raucous] parties," or "allege that any woman who attended the alleged parties did so as a condition of employment, or because they would not have received a promotion otherwise."[128] Wells Fargo argues that "a careful reading of Molina's allegations actually suggests that Wells Fargo denied Molina promotions because of how she socialized with co-workers, not because she is female."[129] In opposition, Molina says that she sufficiently alleged *quid pro quo* sexual harassment because of her allegations that "women who attended parties with nudity, inappropriate videos, and dare games were promoted," and that "unless women like herself were willing to participate in parties with nudity they were not being promoted."[130]

---

[126] *Duran v. Ashcroft*, 114 F. Appx. 368, 371–72 (10th Cir. 2004) (unpublished).

[127] *Hernandez*, 684 F.3d at 958–59.

[128] Wells Fargo Reply at 6–7.

[129] Motion to Dismiss at 10.

[130] Molina's Response at 7.

Wells Fargo is correct. Under Title VII, it is "an unlawful employment practice for an employer . . . to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's . . . sex." [131] This provision entails "two distinct categories of sexual harassment claims: *quid pro quo* sexual harassment, and hostile work environment sexual harassment." [132] Molina did not allege that she was sexually harassed because of a hostile work environment. [133] Instead, Molina argues that she alleged a *quid pro quo* sexual harassment claim. [134] To establish a *quid pro quo* sexual harassment claim, Molina must show that "submission to sexual conduct [was] made a condition of concrete employment benefits." [135]

In *Taken v. Oklahoma Corporation Commission*, [136] two female employees "claim[ed] they were not selected for a promotion that was awarded to an unqualified black woman because she was romantically involved with the person who made the promotion decision, a black man." [137] Because the female employees' sexual harassment claim was "based on a voluntary romantic affiliation, and not on any gender differences," the court "conclude[d] that [the female employees] d[id] not state a claim for relief under Title VII." [138] "[Both employees] were in the same position as all men and all other women would have been." [139] In other words, the court

---

[131] 42 U.S.C. § 2000e-2(a)(1).

[132] *Hicks*, 833 F.2d at 1413.

[133] *See* Complaint; Molina's Response at 7.

[134] Molina's Response at 7.

[135] *Hicks*, 833 F.2d at 1413.

[136] 125 F.3d 1366 (10th Cir. 1997).

[137] *Id.* at 1368.

[138] *Id.* at 1370.

[139] *Id.*

"decline[d] to extend Title VII to include consensual romantic involvements" because "Title VII's reference to 'sex' means a class delineated by gender, rather than sexual affiliations."[140]

Here, Molina did not show that her *quid pro quo* sexual harassment claim is plausible because none of her factual allegations suggest that any kind of sexual conduct was a condition of promotion. Molina instead states in her Complaint that "Wells Fargo managers were holding raucous parties with Wells Fargo employees," and that these parties involved alcohol, nudity, sexual behavior, dare games, and inappropriate videos.[141] These parties had sexual overtones but did not require sexual conduct on her part. She alleges that "[m]any of the employees who attended these parties were the employees who were getting promoted over Molina," including at least one woman.[142] Nowhere in her Complaint does Molina allege that anyone was being pressured to attend these parties or to submit to sexual conduct while at these parties.[143] Rather, the operative distinction between those that were promoted and those that were not promoted is that those promoted chose, without coercion or pressure, to socialize with co-workers and Wells Fargo managers at the "raucous" parties.[144] Even if the promoted employees participated in sexual conduct at these parties, and there is no indication in the Complaint that they did, the Complaint does not suggest that such participation was involuntary or nonconsensual or that she was subjected to any such demands.[145] In addition, Molina's reference to a woman who was promoted after attending the raucous parties does not demonstrate that men and women were

---

[140] *Id.* at 1369–70.

[141] Complaint ¶¶ 48, 126.

[142] *Id.* ¶¶ 49–50.

[143] *See* Complaint.

[144] *Id.* ¶¶ 48–50.

[145] *See* Complaint.

being treated differently, but demonstrates that they were treated the same. Molina "[was] in the same position as all men and all other women would have been."[146]

While the raucous parties may not have been admirable conduct, and might have seemed to have some relation to a hostile environment claim if one had been stated, Molina's factual allegations are the kind of "consensual . . . involvements" or "sexual affiliations" to which the Tenth Circuit declined to extend Title VII protection in *Taken*.[147] Therefore, Wells Fargo's Motion to Dismiss as to Molina's *quid pro quo* sexual harassment claim is GRANTED.

**Molina's Sixth Cause of Action is a Separate Claim**

Wells Fargo argues that "constructive termination[, Molina's sixth cause of action,] cannot constitute a separate claim" because it is "encompassed within [Molina's] race and sex discrimination claims."[148] Molina argues that her constructive termination claim is an "alternative theory to employment discrimination."[149]

This issue was faced by the United States Supreme Court in *Green v. Brennan*.[150] Although not central to its holding, a majority of the Court, in responding to the dissent, explained that constructive discharge is a separate claim.[151] Specifically, the Court said that *Pennsylvania State Police v. Suders*[152] "expressly held that constructive discharge is a claim distinct from the underlying discriminatory act."[153] "[A] hostile-work-environment claim is a

---

[146] *Taken*, 125 F.3d at 1370.

[147] *Clark v. Cache Valley Elec. Co.*, 573 F. Appx. 693, 697 (10th Cir. 2014) (unpublished) ("[O]ther motives such as friendship, nepotism, or personal fondness or intimacy, rather than an actual sexual relationship, also suffice to remove the case from Title VII's anti-discrimination provisions.").

[148] Motion to Dismiss at 14; Wells Fargo Reply at 7.

[149] Molina's Response at 7.

[150] 136 S. Ct. 1769 (2016).

[151] *Id.* at 1779.

[152] 542 U.S. 129 (2004).

[153] *Green*, 136 S. Ct. at 1779.

'lesser included component' of the 'graver claim of hostile-environment constructive discharge.'"[154] Therefore, Wells Fargo's Motion to Dismiss as to Molina's sixth cause of action is DENIED.

**Molina's Eighth Cause of Action Alleges Sufficient Facts to Show That Molina Was Entitled to FMLA Leave.**

Wells Fargo asserts that Molina's subjective belief, without medical certification, that she needed an accommodation is inadequate to state a plausible claim under the FMLA.[155] Alternatively, if medical certification is not required, Wells Fargo argues that Molina did not plead factual allegations that suggest her leave was medically necessary.[156] Molina responds that she was not required to provide medical certification because Wells Fargo did not request it.[157] She also argues that her complaint is facially plausible because it may be inferred from Wells Fargo's responses—such as Human Resources saying Molina did not qualify for FMLA leave— that Wells Fargo did not provide written notice of the certification requirement or the consequences that follow from not providing certification.[158]

Molina is correct. The FMLA makes it "unlawful for any employer to interfere with, restrain, or deny the exercise of or the attempt to exercise, any right" to FMLA leave.[159] To show that Wells Fargo interfered with her right to FMLA leave, Molina must establish "(1) that [s]he was entitled to FMLA leave, (2) that some adverse action by [Wells Fargo] interfered with h[er] right to take FMLA leave, and (3) that [Wells Fargo's] action was related to the exercise or

---

[154] *Id.* (quoting *Suders*, 542 U.S. at 149).

[155] Motion to Dismiss at 7.

[156] Wells Fargo Reply at 3.

[157] Molina's Response at 3–4.

[158] *Id.* at 4.

[159] 29 U.S.C. § 2615(a)(1) (2012).

attempted exercise of h[er] FMLA rights."[160] Molina is entitled to leave under the FMLA for any number of reasons, including "[b]ecause of a serious health condition that makes [her] unable to perform the functions of the position."[161] If Molina asks for FMLA leave because of a serious health condition, Wells Fargo "may require" that the request "be supported by a certification issued by the health care provider of [Molina]."[162] Each time Molina requests FMLA leave, Wells Fargo is obligated to "notify [Molina] of [her] eligibility to take FMLA leave within five business days."[163] Wells Fargo must "detail[]," in writing, "the specific expectations and obligations of [Molina] and explain[] any consequences of a failure to meet these obligations" every time Wells Fargo notifies Molina of her eligibility to take FMLA leave.[164]

      All the cases that Wells Fargo cites to support the proposition that medical certification is needed to state a plausible claim under the FMLA are misapplied. Each case either suggests or states that an employee does not need to provide medical certification unless the employer exercises its right or option to require certification.[165] Therefore, Molina did not need to plead that she had shown Wells Fargo medical documentation proving that FMLA leave was medically

---

[160] *Jones v. Denver Pub. Sch.*, 427 F.3d 1315, 1319 (10th Cir. 2005).

[161] 29 U.S.C. § 2612(a)(1)(D) (2012).

[162] *Id.* § 2613(a).

[163] 29 C.F.R. § 825.300(b)(1) (2016).

[164] *Id.* § 825.300(c)(1).

[165] *Jones,* 427 F.3d at 1322 (pointing to 29 U.S.C. § 2613, which "entitl[es] an employer to require certification by a health care provider," as one of the "certification rights" that may be exercised under the FMLA); *Robinson v. Farmers Servs., L.L.C.*, No. 10-CV02244-JTM, 2010 WL 4067180, at *2 (D. Kan. Oct. 15, 2010) ("An employer *may* require an employee to submit certification along with a request for FMLA leave.") (emphasis added); *Myers v. Dolgencorp, Inc.*, No. 04-4137-JAR, 2006 WL 408242, at *3 (D. Kan. Feb. 15, 2006) (explaining that after the employee requested FMLA leave the employer sent a letter telling the employee that the included medical certification form was to be completed by the employee's doctor in twenty calendar days); *Allender v. Raytheon Aircraft Co.*, 339 F. Supp. 2d 1196, 1205 (D. Kan. 2004), *aff'd*, 439 F.3d 1236 (10th Cir. 2006) (contrasting the case before the court with *Perry v. Jaguar of Troy*, 353 F.3d 510 (6th Cir.2003), which had not required medical certification because the plaintiff "had not been informed generally of the need for physician certification," and explaining that the employee had been "generally informed of [the employer's] requirement by the flier distributed to employees").

necessary because, based solely on the pleadings, Wells Fargo did not require medical

certification.[166] In addition, there are no factual allegations that show Wells Fargo responded to

Molina's request for FMLA leave by notifying Molina, in writing, of a requirement for medical

certification or of the consequences for not meeting such an obligation.[167]

Molina thus sufficiently pleaded that she was entitled to FMLA leave because of her

serious health condition or disability. Because this is the only prong of Molina's FMLA

interference claim that Wells Fargo challenged, Wells Fargo's Motion to Dismiss as to Molina's

eighth cause of action is DENIED.

**Molina's Request for Leave to Amend is Denied Because Her Request is Not a Motion.**

At the end of Molina's Response to Wells Fargo's Motion to Dismiss, Molina requests

for leave to amend for the first time. She says,

> [S]hould the Court . . . decide that dismissal of the Complaint is appropriate, Molina requests the opportunity to cure any deficiencies that the Court may determine there to be by amending the Complaint within thirty days of the Court's order. . . . Allowing Molina to amend her complaint a second time would not cause any prejudice to the Defendant.[168]

Wells Fargo argues that allowing Molina to amend would be futile, and that Molina's

Response did not provide any grounds that justify allowing the amendment.[169] Wells Fargo's

futility argument does not need to be reached because Molina did not state with particularity the

grounds for the amendment.

---

[166] *See* Complaint.

[167] *See id.*

[168] Molina's Response at 8.

[169] Motion to Dismiss at 15; Wells Fargo Reply at 9.

When a party requests leave from the court to file an amended complaint, "[t]he court should freely give leave when justice so requires."[170] Although liberal, "[t]his policy is not limitless and must be balanced against Fed. R. Civ. P. 7(b)(1)."[171] Rule 7(b)(1) states that "[a] request for a court order must be made by motion," and that the "motion must . . . state with particularity the grounds for seeking the order."[172] "[A] request for leave to amend must give adequate notice to the district court and to the opposing party of the basis of the proposed amendment before the court is required to recognize that a motion for leave to amend is before it."[173] "Our requirement of notice merely assures that '[w]e do not require district courts to engage in independent research or read the minds of litigants to determine if information justifying an amendment exists.'"[174]

In *Calderon*, the plaintiff requested,

> [o]n the last page of her Memorandum in Opposition of Defendants' Motion to Dismiss, . . . that "should the court determine the need for facts or [that] further facts be stated with '. . . sufficient particularity to place the defendants in a position of notice as to the nature of the action against them . . .' grant leave and sufficient time in which Calderon would be '. . . permitted to cure any specified defects within the pleadings.'"[175]

In considering this request against the "standard of adequate notice to the courts and the opposing party," the Tenth Circuit "h[e]ld that [the plaintiff's] single sentence, lacking a statement for the grounds for amendment and dangling at the end of her memorandum, did not rise to the level of a motion for leave to amend."[176] "Because a motion for leave to amend was

---

[170] Fed. R. Civ. P. 15(a)(2).

[171] *Calderon v. Kansas Dep't of Soc. & Rehab. Servs.*, 181 F.3d 1180, 1186 (10th Cir. 1999).

[172] Fed. R. Civ. P. 7(b)(1).

[173] *Calderon*, 181 F.3d at 1186–87.

[174] *Id.* at 1187.

[175] *Id.* at 1185.

[176] *Id.* at 1187.

never properly before it, the district court did not abuse its discretion in failing to address [the plaintiff's] request for leave to cure deficiencies in her pleadings."[177] Thus, the Tenth Circuit affirmed the lower court's dismissal with prejudice as to the plaintiff's federal claims.[178]

Similar to the plaintiff in *Calderon*, Molina simply tacks on at the end of her response a request to cure any deficiencies found in her Complaint. Without more, Molina does not give adequate notice as to the basis of her request for leave to file an amended complaint. Molina's request for leave to file an amended complaint is thus not properly before the court because it is not sufficient as a motion made in accordance with Rule 7(b)(1). Consequently, Molina's request is DENIED.

## ORDER

IT IS HEREBY ORDERED that Wells Fargo's Motion to Dismiss[179] is GRANTED IN PART and DENIED IN PART. Molina's first, fourth, and seventh causes of action are dismissed with prejudice. Molina's fifth cause of action is dismissed without prejudice because the Complaint may have alleged another sexual discrimination claim.[180] Molina's second, third, sixth, and eighth causes of action survive. Molina's request to file an amended complaint is DENIED without prejudice.

---

[177] *Id.*

[178] *Id.*; *Calderon v. State of Kansas*, 24 F. Supp. 2d 1138, 1142 (D. Kan. 1998).

[179] Defendant Wells Fargo Bank, National Association's Motion to Dismiss and Supporting Memorandum of Points and Authorities, docket no. 8, filed June 14, 2016.

[180] *See* Complaint ¶¶ 122–28.

Signed March 29, 2017.

BY THE COURT

District Judge David Nuffer